1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    EASTERN DISTRICT OF CALIFORNIA

7

8   SAN LUIS & DELTA-MENDOTA WATER    )   1:09-cv-1053 OWW DLB
    AUTHORITY; WESTLANDS WATER        )   1:09-cv-1090 OWW DLB
9   DISTRICT,                         )   1:09-cv-1378 OWW DLB
                                      )   1:09-cv-1520 OWW SMS
10             Plaintiffs,            )   1:09-cv-1580 OWW DLB
                                      )   1:09-cv-1625 OWW SMS
11        v.                          )
                                      )   JOINT SCHEDULING CONFERENCE
12   GARY F. LOCKE, as Secretary of   )   ORDER AND ORDER
    the United States Department of   )   CONSOLIDATING CASES
13   Commerce; et al.,                )
                                      )   File Administrative Record
14             Defendants.            )   re 2009 BiOp: 10/19/09
    _____    )
15                                    )   File CD-Rom re:
    STOCKTON EAST WATER DISTRICT,     )   Administrative Record:
16   et al.,                          )   11/19/09
                                      )
17             Plaintiffs,            )   Motions to Augment/
                                      )   Challenge Administrative
18        v.                          )   Record: 12/14/09
                                      )
19   NATIONAL OCEANIC AND ATMOSPHERIC )   Opposition: 1/15/10
    ADMINISTRATION, et al.,           )
20                                    )   Replies: 1/29/10
               Defendants.            )
21   _____   )   Hearing: 2/22/10 10:00
                                      )   Ctrm. 3
22   STATE WATER CONTRACTORS,         )
                                      )   Other Issues Resolvable by
23             Plaintiff,             )   Early Dispositive Motion:
                                      )   10/10/09
24        v.                          )
                                      )   Dispositive Motions re NEPA
25   GARY F. LOCKE, Secretary, etc.,  )   Claims: 11/2/09
    et al.,                           )
26                                    )   Opposition: 12/1/09
               Defendants.            )
27   _____   )   Replies: 12/15/09

28

                                 1

| | |
|---|---|
| KERN COUNTY WATER AGENCY, et al., | Hearing: 1/11/10 10:00 Ctrm. 3 |
| Plaintiffs, | Consolidated Responses in Favor of Court-Appointed Expert: 1/22/10 |
| v. | |
| UNITED STATES DEPARTMENT OF COMMERCE, et al., | Oppositions Thereto: 2/1/10 |
| | Hearing: 2/8/10 11:00 Ctrm. 3 |
| Defendants. | |
| OAKDALE IRRIGATION DISTRICT, et al., | Further Scheduling Conference: 3/1/10 11:00 Ctrm. 3 |
| Plaintiffs, | |
| v. | |
| UNITED STATES DEPARTMENT OF COMMERCE, et al., | |
| Defendants. | |
| METROPOLITAN WATER DISTRICT OF SOUTHERN CALIFORNIA, | |
| Plaintiff, | |
| v. | |
| NATIONAL MARINE FISHERIES SERVICE, et al., | |
| Defendants. | |

I.   DATE OF SCHEDULING CONFERENCE.

     September 10, 2009.

II.  CONSOLIDATION.

     1.   Six separate cases have been filed challenging actions by the National Marine Fisheries Service ("NMFS") and other Federal Defendants in preparing and adopting the June 4, 2009 Biological Opinion ("2009 BiOp") regarding the effect of the

2

1    long-term operation of the California State Water Project ("SWP")

2    and the federal Central Valley Project ("CVP") on the Sacramento

3    River winter-run Chinook salmon, the Central Valley spring-run

4    Chinook salmon, the Central Valley steelhead, the Central

5    California Coast steelhead, the Southern Distinct Population of

6    North American green sturgeon, and the Southern Resident killer

7    whales; and on the designated or proposed critical habitat for

8    the referenced salmon, steelhead and green sturgeon.  A

9    scheduling conference was held in five of these six cases on

10   September 10, 2009: *San Luis & Delta-Mendota Water Authority, et*

11   *al. v. Locke, et al.*, Case No. 1:09-cv-1053 (E.D. Cal., filed

12   June 15, 2009) ("San Luis Case"); *Stockton East Water District v.*

13   *NOAA, et al.*, Case No. 1:09-cv-1090 (filed June 19, 2009)

14   ("Stockton East Case"); *State Water Contractors v. Locke, et al.*,

15   Case No. 1:09-cv-1378 (filed August 6, 2009) ("State Contractors

16   Case"), *Kern County Water Agency and Coalition for a Sustainable*

17   *Delta, et al. v. U.S. Dept. of Commerce, et al.*, Case No. 1:09-

18   cv-1520 (filed August 26, 2009) ("Coalition Case"); and *Oakdale*

19   *Irrigation District and South San Joaquin Irrigation District v.*

20   *U.S. Dept. of Commerce, et al.*, Case No. 1:09-cv-1580 (filed

21   August 31, 2009) ("OID/SSJID Case").  A sixth case, *Metropolitan*

22   *Water District v. National Marine Fisheries Service, et al.*, Case

23   No. 1:09-cv-1625, ("Met Case"), was filed September 14, 2009.

24        2.    The Court conducted a hearing on August 31, 2009 on the

25   Federal Defendants' Motion for Consolidation of the first five

26   above-captioned cases and responses thereto and determined that

27   some coordination or consolidation of the common claims in the

28   Salmon Cases is appropriate but deferred decision about the

                                    **3**

extent and terms of the consolidation until this Scheduling

Conference.  The parties also agree that consolidation should

include the newly-filed Met Case.

3.     The Parties agree that consolidation does not require

merger of the claims, that consolidation does not make the

parties to one case parties to another case, and that the cases

retain their distinctiveness and, where appropriate, the issues

and briefing shall remain separate.  The parties further agree to

coordinate their briefings and other case proceedings to the

extent possible, including as follows:

- Plaintiffs will make good faith efforts to minimize redundant briefing of issues associated with the sufficiency of the record, including by filing joint briefs to the extent practicable, recognizing that the Plaintiffs' interest are not identical.

- Plaintiffs will coordinate before propounding discovery, and if Plaintiffs plan to propound discovery with respect to the same claim, will propound consolidated discovery.

- Except as otherwise provided herein, Plaintiffs will coordinate before filing motions for summary adjudication respecting claims that are common among the cases, including coordinating the filing and calendaring so that these motions will be argued on the same day provided (1) the calendar for briefing the motions is extended and (2) sufficient time is provided for each Plaintiff to present argument on the motions. In conjunction with these motions, Plaintiffs will (1) file a single, consolidated statement of undisputed facts, (2) exchange draft motion papers, and (3) rely upon and incorporate, whenever feasible, the written arguments made by other Plaintiffs so as to minimize duplicative briefing.

- Plaintiffs will coordinate before filing any other motions.  If Plaintiffs plan to file motions seeking action by the Court on the same issue, Plaintiffs will coordinate filing and calendaring so that the apposite motions will be argued on the same day.

- Except as otherwise provided herein, Plaintiffs will schedule court appearances to coincide.

4

All the procedures above will greatly streamline the pending litigation regarding the 2009 Salmon BiOp, and any additional actions, and effect a savings of judicial resources without prejudicing the parties' rights to litigate their respective causes of action independently and vigorously in their own best interests.

4. The above-captioned cases are consolidated for all purposes, including trial.  The lowest-numbered case 1:09-cv-1053 shall be the lead case number.  For ease of administration, all subsequent filings shall be docketed under the lead case.

5.   This consolidation shall be without prejudice to the right of any party to assert claims that are unique or that require separate treatment.


III.   IDENTIFICATION OF THE CASES.

1. The parties agree that for the convenience of reference, the title "CONSOLIDATED SALMON CASES" shall be used to refer to the six consolidated actions that are proceeding in this litigation.


IV.   BACKGROUND STATEMENT OF THE CASE AND SUMMARY OF LEGAL
      CONTENTIONS AND RELIEF SOUGHT BY ALL PARTIES.

A.   Summary of Disputed Legal Issues.

1.   The plaintiffs in the Salmon Cases request declaratory and injunctive relief regarding the 2009 BiOp.  The Federal Defendants and Defendant-Intervenors deny Plaintiffs' claims and that the Plaintiffs are entitled to any relief.

2.   The following is a summary of the legal issues

5

1   alleged and the related case information, identified as (1)

2   common claims challenging the 2009 BiOp; and (2) separate claims.

3   The Parties agree that judicial review of all claims challenging

4   the 2009 BiOp may be resolved by cross-motions for summary

5   judgment.   The NEPA claims may be appropriate for early

6   disposition, and certain Plaintiffs may seek to file such an

7   early dispositive motion on those claims.   Further, Plaintiffs in

8   the Stockton East Case and OID/SSJID Case propose a staggered

9   briefing schedule, as set forth below, to distinguish the scope

10  of their claims from those of the other Plaintiffs.

11         3.   Federal Defendants believe that the merits of the

12  NEPA claims should be addressed with all other claims, and only

13  after the administrative record has been compiled, and the Court

14  has resolved any objections to the administrative record.   With

15  respect to the proposed staggered briefing schedule for the

16  Stockton East and OID/SSJID cases, Federal Defendants oppose such

17  a schedule, as noted below.

18         4.   Defendant-Intervenors believe that it would be

19  most efficient for all merits claims to be briefed together and

20  that the merits briefing should not be staggered.   With respect

21  to the NEPA claim, Defendant-Intervenors suggest that briefing on

22  that claim be postponed until this Court decides the nearly

23  identical NEPA claims that have been raised in the Delta Smelt

24  Cases and which are scheduled for hearing on September 28, 2009.

25  The Court's disposition of the NEPA claim in those cases is

26  likely to inform the NEPA claims in these cases.   Thus, for the

27  efficiency of the Court and the Parties, briefing those claims in

28  these cases should be deferred pending a NEPA ruling in the Delta

6

Smelt cases.

B.  **Common Claims Subject to APA Review that are Amenable to Resolution by Dispositive Motion.**[1]

1.  <u>**EPA/APA**</u>:

**All Six Salmon Cases:**

- **NMFS failed to comply with NEPA prior to the preparation and issuance of the 2009 BiOp by failing to undertake any NEPA review, through an EIS, a finding of no significant impact, an EA, or a claim of exemption.**

2.  <u>**ESA/APA/Effects of the Action**</u>:

**San Luis Case:**

- **The 2009 BiOp's analysis of the effects of CVP operations fails to properly determine or describe the environmental baseline and thereby exaggerates changes and incremental impact that would result from proposed CVP operations.**

- **The 2009 BiOp's effects analysis fails to distinguish between discretionary and nondiscretionary CVP operations, and therefore overstates the effects that were properly subject to consultation.**

- **In the 2009 BiOp, defendants failed to properly identify, analyze or determine the incremental effects that will be added to the baseline by discretionary CVP operations.**

- **In the 2009 BiOp, defendants erroneously attributed to the CVP the effects of other stressors on the subject species and subject critical habitat.**

---

[1] **Some plaintiffs believe that some or all of their claims grouped under the heading "Common Claims: Claims Subject to APA Review That Are Amenable to Resolution by Dispositive Motion" may require discovery, expert witness testimony, and/or consideration of extra-record documents, as further described in Issue No. 4(a),** *infra.* **Federal defendants and defendant-intervenors agree these claims are subject to APA review and therefore believe that discovery, expert witness testimony, and consideration of extra-record documents are inappropriate in this record review case.**

- **In the 2009 BiOp, defendants failed to lawfully determine whether proposed CVP operations would jeopardize each of the subject species or would destroy or adversely modify each of the subject critical habitat.**

- **Defendants failed to properly analyze cumulative effects.**

- **The 2009 BiOp erroneously applies a standard that would require CVP operations to accomplish recovery of the subject species.**

**Stockton East Case:**

- **In adopting the 2009 BiOp, defendants incorrectly defined the environmental baseline.**

**State Contractors Case:**

- **The 2009 BiOp violates Section 7 of the ESA, Title 50 of the Code of Federal Regulations and the Consultation Handbook for failure to utilize the required methodology when analyzing the effects of the action and concluding that the CP and SWP will jeopardize the continued existence of the subject species or destroy or adversely modify subject critical habitat**

- **The 2009 BiOp fails to properly identify the additional, discrete effects of the Project beyond the environmental baseline and thus lacks any basis upon which to evaluate the Project's impact on the continued existence of the subject species or the destruction or modification of the subject critical habitat:**

  ‣ **The 2009 BiOp improperly describes the proposed agency action and fails to distinguish between discretionary and nondiscretionary components of the CVP and the SWP.**

  ‣ **The 2009 BiOp employs an improper baseline that fails to evaluate the past, present, and anticipated impacts in the action area and consequently attributes to the projects past and present impacts to the species that should have been included in the environmental baseline.**

8

▸ **The 2009 BiOp fails to quantify or otherwise describe in detail the baseline effects on the subject species and, as a result, improperly attributes baselines effects to the Project.**

• **The 2009 BiOp fails to undertake analysis or make findings regarding whether the effects of the action "appreciably" reduce the likelihood of survival and recovery and uses a baseline that is dramatically different than that in the BA and contrary to the recommendations of Defendants' own experts without adequate explanation.**

• **Because of the above failures, the "jeopardy" conclusion reached by the BiOp is without support and is arbitrary, capricious and an abuse of discretion.**

**OID/SSJID Case:**

• **Defendants failed to include the Friant Unit in the 2009 BiOp and the RPA.**

• **Defendants failed to properly analyze, determine or describe the environmental baseline in the 2009 BiOp.**

• **Defendants failed to properly analyze cumulative impacts of the 2009 BiOp.**

• **NMFS failed to properly model the operations of New Melones such that NMFS has grossly underestimated the impacts of the 2009 BiOp RPA on the Stanislaus River and the Delta.**

**The Coalition Case:**

• **The 2009 BiOp fails to adequately analyze the environmental baseline and effects of the action.**

▸ **Failure to provide any analysis or quantification of the impacts of other stressors on listed species or to differentiate the effects of the stressors from the effects of the action.**

▸ **Failure to differentiate between discretionary and nondiscretionary project operations.**

9

> ▸ **Failure to identify the additional, separate effects that project has on listed species beyond the environmental baseline.**

**The Met Case:**

- **The 2009 BiOp fails to adequately analyze the environmental baseline and effects of the action.**

    > ▸ **Failure to quantify baseline.**

    > ▸ **Failure to differentiate between discretionary and nondiscretionary project operations.**

    > ▸ **Use of a different baseline to evaluate the effects from different project components.**

    > ▸ **Failure to adequately consider marine phase of salmonid life cycle.**

    > ▸ **Setting of jeopardy standard using a recovery goal, rather than using standard set forth in 2008 BiOp for the Federal Columbia River Power System.**

    > ▸ **Use of a particle tracking method, rather than acoustic tracking to evaluate salmonid behavior.**

    > ▸ **Overestimation of entrainment effects and Jones and Banks pumping plants.**

    > ▸ **Failure to adequately use data from wild salmon tracking.**

3.    **ESA/APA/Failure to Use Best Available Science:**

**San Luis Case:**

- **Defendants failed to comply with the NMFS Information Standards Policy, DOC Information Quality Guidelines, NMFS Information Quality guidelines, and related OMB Peer Review Bulletin requirements.**

- **Defendants displayed a pervasive bias against the CVP and SWP, which caused defendants to exclude and dismiss credible analyses while results indicate that major adverse effects on the population dynamics of each of the**

10

subject species are caused by factors other than the operations of the CVP and SWP and involve relationships and factors other than those highlighted in the 2009 BiOp.

- Defendants arbitrarily selected the data they relied upon and disregarded relevant data without explanation.

- Defendants based their analyses on data that was incorrect, incomplete, or otherwise of poor quality, including analyses that were not statistically significant and that suffered from invalid assumptions, transformation of data and improper exclusion of valid data points.

- Defendants reached conclusions that are internally inconsistent.

- Defendants failed to disclose all data, analyses or reports they relied upon and relied on key reports and analyses that were and are unavailable for review.

- Defendants failed to critically analyze and assess the quality of the data and reports upon which they relied.

- Defendants relied on speculative and conclusory determinations without providing any foundation linking such determinations to actual data or analyses.

- Defendants failed to identify and discuss the risk to the quality and accuracy of the 2009 BiOp as a result of their use of one or more unsubstantiated assumptions to reach certain conclusions or make certain calculations.

- Defendants made selective use of data and ignored contrary data.

- Defendants failed to disclose numerous research results and data known to them indicating that factors other than the CVP and SWP are major causes of population-level effects to each of the subject species.

- Defendants failed to quantify the effects or resulting population-level consequences of CVP/SWP operations, which is contrary to defendants' prior acknowledgment that quantitative treatment of eligible data is warranted in BiOps like the 2009 BiOp.

11

- Defendants ignored or failed to respond to comments critiquing and questioning the analyses, conclusions and recommendations of the 2009 BiOp.

Stockton East Case:

- In adopting the 2009 BiOp, defendants failed to use the best scientific and commercial data available.

State Contractors Case:

- Defendants disregarded relevant data without explanation and arbitrarily selected certain other data.

- Defendants made unfounded assumptions without support and based their analyses on data that was incorrect, incomplete and/or incompatible with other data, resulting in assumptions that are scientifically unsupportable.

- Defendants reached conclusions that are internally inconsistent.

- Defendants relied on unsupported speculation rather than data or analysis.

- Defendants failed to quantify the Project's effects on the subject species despite the availability of quantitative scientific data.

- Defendants displayed a pervasive bias against the SWP and the CVP, to the exclusion of all other potential stressors to salmonid species and green sturgeon.

- Defendants failed to use and/or disregarded available numerical scientific data to quantify baseline and incremental Project effects.

- Defendants failed to follow applicable policies and guidelines, including the NMFS Information Standards Policy, the COD Information Quality Guidelines, and the NOAA Information Quality Guidelines.

OID/SSJID Case:

- The modeling done by Defendants to estimate the impacts of the changes resulting from performance of the RPA in terms of temperature, geomorphology, flow, water

12

rights and water supply at New Melones was
not based upon the best available scientific
and commercial data available.

- As to the Stanislaus River, Defendants failed
to distinguish between resident rainbow trout
and anadromous steelhead, failed to
incorporate, use or rely upon 15 years of
published rotary screw trap data, and failed
to identify and explain which operations of
Reclamation, if any, impact anadromous
steelhead in the Stanislaus River.

The Coalition Case:

- Failure to comply with best scientific and
commercial data available requirement.
- 

The Met Case:

- Failure to consider or selective
consideration of relevant data, findings, and
conclusions pertaining to Bay-Delta science,
and improper reliance on incorrect,
incomplete, speculative, and/or unsupported
data.

- Failure to disclose sources of information
relied upon.

4.   ESA/APA: Challenges to the RPA:

San Luis Case:

- Failure to make findings or undertake
analysis pursuant to Section 7 of the ESA or
Title 50 of the Code of Federal Regulations
regarding whether the RPA (1) can be
implemented in a manner consistent with the
intended purpose of the agency action, (2)
can be implemented consistent with the scope
of the action agency's legal authority and
jurisdiction, (3) is economically and
technologically feasible, or (4) will avoid
the likelihood of jeopardizing the continued
existence of listed species or result in the
destruction or adverse modification of its
habitat.

- Violation of Section 7 by requiring an RPA
that cannot be implemented consistently
within the scope of Reclamation's legal
authority and jurisdiction.

13

Stockton East Case:

- Failure to adopt an RPA that (1) can be implemented in a manner consistent with the intended purpose of the action, (2) can be implemented consistent with the scope of the action agency's legal authority and jurisdiction and (3) is economically and technologically feasible.

- Imposition of an RPA that alters the basic design, location, scope, duration and timing of the action and involves major changes to the action.

- Failure to provide a rational connection between the fact found in the 2009 BiOp and the conclusions reached by the BiOp and actions imposed by the RPA.

- Imposition of conditions by the RPA that are not linked to the specific harm caused by the action subject to consultation and failure to specify the projected harm and required level of mitigation in measurable, quantifiable criteria.

- Violation of the California Constitution by imposing operational requirements for flows that require more water than reasonably required for the beneficial use to be served, thereby constituting a waste and unreasonable use of water.

- Violation of the California Constitution by Reclamation when it agreed to comply with the operation requirements for flows because they will release more water than reasonably required for the beneficial use to be served, thereby constituting a waste and unreasonable use of water.

State Contractors Case:

- Failure to make findings or undertake analysis pursuant to Section 7 of the ESA or Title 50 of the Code of Federal Regulations regarding whether the RPA (1) can be implemented in a manner consistent with the intended purpose of the agency action, (2) can be implemented consistent with the scope of the action agency's legal authority and jurisdiction, (3) is economically and technologically feasible, or (4) will avoid the likelihood of jeopardizing the continued

14

existence of listed species or result in the destruction or adverse modification of its habitat.

- Violation of Section 7 by requiring an RPA that cannot be implemented consistently within the scope of DWR's legal authority and jurisdiction.

- RPA improperly requires the Projects to compensate for the impacts to species caused by baseline effects, not the operation of the Projects.

- Failure of the BiOp to explain how the RPA set forth in the BiOp will serve to remove the species from jeopardy purportedly caused by the SWP and CVP.

OID/SSJID Case:

- Defendants' imposition of an RPA that will alter or reduce the water rights of OID and SSJID on the Stanislaus River is arbitrary and capricious.

The Coalition Case:

- Failure to comply with the regulatory requirements for specifying an RPA.  For example:

  - Failure to consider whether the RPA can be implemented in a manner consistent with the intended purpose of the SWP and CVP.

  - Failure to analyze and explain how the RPA will avoid jeopardy or adverse modification of critical habitat.

The Met Case:

- Failure to make findings or undertake analysis pursuant to Section 7 of the ESA or Title 50 of the Code of Federal Regulations regarding whether the RPA (1) can be implemented in a manner consistent with the intended purpose of the agency action, (2) can be implemented consistent with the scope of the action agency's legal authority and jurisdiction, (3) is economically and technologically feasible, or (4) will avoid the likelihood of jeopardizing the continued existence of listed species or result in the

destruction or adverse modification of its habitat.

- Defining RPAs that are broader than necessary because failed to properly define environmental baseline, quantify existing populations, or use quantitative modeling and integrative analyses to evaluate effects.

- Failure to support RPAs with best available science.

C.   Separate Claims Subject to APA Review That Are Amenable to Resolution by Dispositive Motion

1.   Reclamation Defendants' Decision to Accept and Implement the 2009 BiOp is Arbitrary and Capricious:

San Luis Case:

- Reclamation's decision to conditionally accept and to immediately implement the 2009 BiOp is arbitrary, capricious and an abuse of discretion and in excess of statutory jurisdiction, authority or limitations because it is based upon and compelled by the powerful coercive effect of the 2009 BiOp and implements requirements imposed by the BiOp that are illegal and impermissible, for the reasons set forth above.

OID/SSJID Case:

- Reclamation's decision to accept and implement the 2009 BiOp is arbitrary and capricious as it will alter or reduce the water rights of the OID and SSJID on the Stanislaus River.

- 

- Reclamation's decision to accept and implement the 2009 BiOp is compelled by the coercive effect of the 2009 BiOp and implements requirements imposed by the 2009 BiOp that are illegal and impermissible.

2.   Reclamation's Compliance with 2009 BiOp Will Violate Its Water Rights:

OID/SSJID Case:

- Strict compliance by Reclamation with the terms and conditions of the 2009 BiOp will result in violation of its water rights for New Melones and

16

the CVP and hence a violation of the Reclamation Act of 1902.

3.    **Invalid Application of the Jeopardy Standard in Violation of the ESA and APA**:

The Coalition Case:

- 2009 BiOp applies invalid jeopardy standard by interpreting jeopardy in terms of recovery of the species.  The 2009 BiOp conflates survival and recovery analysis in to analysis of recovery alone.

- 2009 BiOp fails to use best available science in jeopardy analysis for salmonids.

- 2009 BiOp's use of a 100-year extinction risk does not provide for a reliable risk extinction estimate and therefore the 2009 BiOp's application of jeopardy standard is arbitrary and capricious.

4.    **ESA-APA Effects Analysis, Jeopardy and Adverse Modification Determinations for Green Sturgeon**:

The Coalition Case:

- 2009 BiOp fails to properly identify and analyze the effects of the action on the green sturgeon.

- 2009 BiOp fails to provide an assessment of the environmental baseline for the green sturgeon.

The Met Case:

- Use of a speculative "potential spawning range" theory to evaluate green sturgeon spawning habitat, and lack of quantitative data on green sturgeon abundance.

5.    **ESA-APA Failure to Provide Rational Connection Between Facts Found and Conclusions Made**.

The Met Case:

- Failure to articulate rational connections between (a) analysis of status of the species, environmental baseline, and effects of their action, and (b) conclusions with regard to jeopardy and adverse modification and conclusion that RPA will avoid jeopardy and adverse modification.

17

       **6.**    **ESA/APA Effects Analysis, Jeopardy and Adverse Modification Determinations for Southern Resident killer whale:**

     The Coalition Case:

- 2009 BiOp makes unsupported conclusions about the CVP and SWP's potential populations-level effects on the killer whale.

- 2009 BiOp does not quantify the effects of other stressors on the killer whale and does not analyze the effects of these stressors separately from the effects of the proposed action.
- 
     The Met Case:

- Improper use of a qualitative evaluation of project effects on Southern Resident killer whales.

**V.   ORDERS RE AMENDMENTS TO PLEADINGS.**

    1.   Plaintiffs in the San Luis case intend to amend their complaint on or about October 5, 2009, to add claims against the United States Bureau of Reclamation.


**VI.   ADMINISTRATIVE RECORD ISSUES.**

    1.   The Parties agree that the administrative record for the 2009 BiOp will be filed on October 19, 2009.  The Federal Defendants shall provide an electronically searchable format for the record to be provided on or before November 19, 2009.  After the Administrative Record is filed, the Parties shall confer promptly to resolve any disputes regarding the adequacy of the Administrative Record.  If any disputes between the Parties are not resolved, Plaintiffs and Federal Defendants propose that any motions to augment the record or challenge the contents of the record will be filed on or before December 14, 2009, with

oppositions to such motions due on January 15, 2010, replies due on January 29, 2010.  In the event that one or more motions to augment the record are filed and the moving party seeks to augment the record with a voluminous quantity of documents (i.e., in excess of 25 megabytes), then the moving party is instructed to file and serve such documents on a DVD or CD by overnight delivery and provide a single, printed copy to the Court for its use.  The motions hearing will be held on February 22, 2010.

        2.    Plaintiffs and DWR anticipate that they will submit declarations by experts to help explain complex technical and scientific material in the record.  Federal Defendants and Defendant-Intervenors do not anticipate that the limited exceptions for extra-record evidence, including declarations by experts, will apply with respect to these claims.  Federal Defendants and Defendant-Intervenors maintain that extra-record evidence is inappropriate and that the Court should not consider the testimony of the Plaintiffs' expert witnesses or any extra-record documents.  Accordingly, Federal Defendants and Defendant-Intervenors request that the motions concerning the sufficiency of the record be limited to memoranda identifying the applicable exception(s) to record review and a general description of the nature of the proposed expert witness testimony and/or extra-record documents.  Furthermore, if such extra-record evidence is allowed by the court, Federal Defendants and Defendant-Intervenors assert this will require modifications to the merits briefing and hearing date schedules set out below, as Federal Defendants and Defendant-Intervenors reserve the right to insist on expert reports and undertake discovery on Plaintiffs' experts.

1  Plaintiffs disagree that any such discovery will require
2  modifications to the merits briefing and hearing dates.

3

4  VII.   MATTERS PRESENTING THEMSELVES FOR EARLY DISPOSITION.

5       1.   Certain Plaintiffs may seek early disposition, by way
6  of motion for summary adjudication, of the allegations regarding
7  whether the Federal Defendants complied with obligations under
8  NEPA.   Such an early motion for summary adjudication will be
9  filed in accordance with the Court's normal law and motion
10 calendar.   Federal Defendants oppose this bifurcation and believe
11 that the Parties should address all claims in one set of
12 briefing, only after the administrative record has been complied,
13 and the Court has resolved any objections to the Administrative
14 Record.

15      2.   Defendant-Intervenors believe that it would be most
16 efficient for all merits claims to be briefed together and that
17 the merits briefing should not be staggered.   Defendant-
18 Intervenors further believe that briefing of the NEPA claim
19 should be postponed until this Court decides the nearly identical
20 NEPA claims that have been raised in the Delta smelt cases.   The
21 Court's disposition of the NEPA claim in those cases will
22 certainly inform the NEPA claims in these cases, and may render
23 briefing the NEPA claims unnecessary in this case.   If there is
24 early briefing of the NEPA claims, Defendant-Intervenors believe
25 that the parties should agree to a specific schedule for briefing
26 those claims and, if not, reserve the right to request
27 modification of the briefing schedule.

28      3.   After considering the parties' respective position, it

is determined the following schedule shall be adopted for
resolution by dispositive motion of the NEPA claims.  If any
party believes any other issue is resolvable by early dispositive
motion, that party shall give notice of the nature of the claim
on or before October 10, 2009.  Dispositive motions on the NEPA
claims shall be filed on or before November 2, 2009.  Oppositions
shall be filed by December 1, 2009.  Replies shall be filed by
December 15, 2009.  The motion will be heard on January 11, 2010.

VIII.       DESCRIPTION OF CLAIMS AND ISSUES THAT MAY BE THE
SUBJECT OF DISCOVERY.

1.      The majority of the claims in the Salmon Cases are
record-based.  Other than as described in the remainder of this
section, Plaintiffs generally do not anticipate that discovery
will be necessary, except to the extent that discovery may be
necessary to augment or challenge the contents of the
administrative record.  Federal Defendants and Defendant-
Intervenors assert that all the claims are subject to the record
review rules and discovery is inappropriate.

2.      Some Plaintiffs believe that discovery may be required,
as well as expert testimony, for their claims identified above as
falling under the heading "Common Claims: APA Claims That Are
Amenable to Resolution by Dispositive Motion."  More
particularly, some Plaintiffs believe that such claims may
require consideration of extra-record documents based on the
recognized exceptions to the consideration of extra-record
materials, as discussed, *e.g.*, in this Court's Order in the case
challenging the 2004 Delta Smelt BiOp (*NRDC, et al. v.*

*Kempthorne, et al.*, Case No. 1:05-cv-1207, Doc. 323 at 33-39.)
This extra-record evidence, and its development, may support or
require discovery.  These Plaintiffs also believe that expert
witness testimony will be required for proper consideration of
the complex scientific and technical information upon which the
2009 BiOp was supposed to be based.

3.    If Plaintiffs are successful on claims against the 2009
BiOp, Plaintiffs in all of the cases and DWR will likely seek
discovery related to the appropriate remedy.

4.    Federal Defendants and Defendant-Intervenors believe
that, because this is a record review case to be decided upon the
basis of the administrative record, extra-record evidence,
discovery, and expert witness testimony is inappropriate.  If the
Court permits extra-record evidence, discovery, and expert
witness testimony, both Federal Defendants and Defendant-
Intervenors reserve the right to depose Plaintiffs' experts, seek
additional discovery, and request modification of the briefing
schedule.

5.    The Court declines to make any decisions about the
subject of discovery pending resolution of motions directed to
the Administrative Record.

IX.   COURT-APPOINTED EXPERT.

1.    Plaintiffs and DWR support the use of a court-appointed
expert under Federal Rule of Evidence 706.

2.    Federal Defendants oppose the use of a Rule 706
expert, which necessarily augments the administrative record, as
not appropriate and not in accordance with the APA.  If the Court

22

decides to appoint such an expert, Federal Defendants agree with the Defendant-Intervenors that the use of such an expert should be narrowly-tailored and the costs borne by Plaintiffs.

3.    Defendant-Intervenors believe that the use of a court-appointed expert would be inappropriate and unnecessary.  If the Court decides to appoint an expert, the Court's use of the expert should be very narrow in order to ensure that the Court's review is appropriately focused on the adequacy of the administrative record.  If the Court decides to appoint an expert, the costs of any such expert should be borne by Plaintiffs.

4.    Plaintiffs assert that there is no good cause for Plaintiffs to bear all of the costs of a court-appointed expert and propose that the costs be divided equally either three ways - among Plaintiffs, Federal Defendants and Defendant-Intervenors - or among all parties.

5.    The Court intends to provide notice to counsel concerning its decision whether a 706 expert is required in this case  and the proposed terms on which the expert would serve on or before December 21, 2009.  The parties shall file consolidated responses with all parties supporting the Court's proposal to file a consolidated response and all parties opposing the Court's proposal to file a consolidated response on or before January 22, 2010.  Responses to the proposals shall include the identity of a proposed court-appointed expert, the terms to govern the expert pursuant to Rule 706 and conditions on which the expert would serve, provision for compensation of the expert, and any other issues that pertain to utilization of the expert.  Oppositions on the expert's role shall be filed on or before February 1, 2010.

1  The matter shall be heard on February 8, 2010, at 11:00 a.m. in

2  Courtroom 3.

3

4  X.   SCHEDULING DATES.

5       1.   A scheduling conference shall be held on March 1, 2010,

6  at 11:00 a.m. in Courtroom 3 at which time issues of extra-record

7  discovery, pre-trial motions, and dispositive cross-motions shall

8  be addressed.

9       2.   Pre-Trial Conference and Trial date to be scheduled.

10

11 XI.  CONSENT TO MAGISTRATE JUDGE.

12      1.   The parties do not agree that a Magistrate Judge is

13 appropriate for the Salmon Cases.

14

15 XII. STATUS OF ALL MATTERS PRESENTLY SET BEFORE THE COURT.

16      1. Intervention: On August 31, 2009, the Court conducted a

17 hearing in the San Luis, Stockton East and State Contractors'

18 Cases on the Motions to Intervene by Pacific Coast Federation of

19 Fishermen's Associations/Institute for Fisheries Resources, the

20 Bay Institute, California Trout, Friends of the River, Natural

21 Resources Defense Council, Northern California Council of the

22 Federation of Fly Fishers, San Francisco Baykeeper, Sacramento

23 River Preservation Trust, and The Winnemem Wintu Tribe

24 (collectively, "Defendant-Intervenors") and responses thereto and

25 determined that Defendant-Intervenors are granted leave to

26 intervene as of right for all purposes in these proceedings.  The

27 Parties to the Coalition Case stipulated to Defendant-

28 Intervenors' intervention in that case provided that Defendant-

24

1  Intervenors do not file any cross or counter claims as to the

2  existing complaint.  Defendant-Intervenors have not yet

3  intervened in the OID/SSJID Case.   Intervention by stipulation is

4  anticipated in the Met Case.

5         2.   For each individual case, the status is as follows:

6            a.   San Luis Case

7               i.   All parties have been served with the

8  Summons, Complaint for Declaratory and Injunctive Relief; Order

9  Setting Mandatory Scheduling Conference; Notice of Related Cases;

10  Motion to Consolidate and Response thereto; and Motion to

11  Intervene.  No answers are yet filed.  The Federal Defendants

12  have received a stipulated extension of time to answer to ten

13  days after service of the amended complaint.  No other law and

14  motion matters related to this action are currently pending

15  before the Court.

16            b.   Stockton East Case

17               i.   All parties have been served with the

18  Summons; Complaint for Declaratory and Injunctive Relief; Notice

19  of Related Cases; Order Setting Mandatory Scheduling Conference;

20  Motion to Consolidate and Response thereto; and Motion to

21  Intervene.  Federal Defendants' answer was filed on August 31,

22  2009.  Defendant-Intervenors' answer was filed on September 3,

23  2009.  No other law and motion matters related to this action are

24  currently pending before the Court.

25            c.   State Contractors Case

26               i.   All parties have been served with the

27  Summons; Complaint for Declaratory and Injunctive Relief; Request

28  for Judicial Notice; Notice of Related Cases; Order Setting

1  Mandatory Scheduling Conference; Motion to Consolidate and

2  Response thereto; and Motion to Intervene.  No answer has yet

3  been filed in this action.  DWR has received a stipulated

4  extension of time to answer to September 21, 2009.  No other law

5  and motion matters related to this action are currently pending

6  before the Court.

7         d.    Coalition Case

8               i.    All parties, except DWR, have been served

9  with the Summons; Complaint for Declaratory and Injunctive

10 Relief; Notice of Related Cases; Civil Cover Sheet; and Corporate

11 Disclosure Statement.  No answer has yet been filed in this

12 action.  No other law and motion matters related to this action

13 are currently pending before the Court.

14        e.    OID/SSJID Case

15              i.    All parties have been served with the

16 Summons; Complaint for Declaratory and Injunctive Relief; and

17 Notice of Related Cases.  No answer has yet been filed.  An

18 amended complaint will likely be filed to correct an error in the

19 Third Cause of Action.  No other law and motion matters related

20 to this action are currently pending before the Court.

21        f.    Met Case

22              i.    All parties have been served with the

23 Summons; Complaint for Declaratory and Injunctive Relief; and

24 Notice of Related Cases.  No answer has yet been filed.  No law

25 and motion matters related to this action are currently pending

26 before the Court.

27

28 XIII.     POSSIBILITY OF SETTLEMENT AND SETTLEMENT CONFERENCE.

1       1.   The parties view the prospect of settlement as
2   unlikely.  In the event the parties believe a settlement
3   conference would be helpful, they shall contact the courtroom
4   deputy and a settlement conference will be scheduled before the
5   assigned Magistrate Judge.

6

7   XIV.   JURY.
8       1.   The Salmon Cases are non-jury cases and shall be tried
9   to the Court without a jury.

10

11  XV.   TRIAL DAYS REQUIRED.
12      1.   The parties estimate one day for dispositive motions on
13  claims identified as appropriate for early disposition.  The
14  parties estimate three full days for the hearings on all other
15  dispositive motions on common claims challenging the 2009 BiOp.
16  Federal Defendants and Defendant-Intervenors estimate one full
17  day for that hearing.

18      2.   If Plaintiffs are successful on the merits of any of
19  their claims against the 2009 BiOp, then Plaintiffs and DWR
20  believe a trial to determine appropriate remedies will be
21  necessary.  Plaintiffs and DWR anticipate two weeks will be
22  required for a remedies trial.  Defendant-Intervenors believe it
23  is premature and speculative to discuss an evidentiary remedies
24  hearing before that becomes necessary.

25

26  XVI. RELATIONSHIP TO OTHER MATTERS PENDING IN THIS OR ANY OTHER
27      COURT.

28      1.   The Salmon Cases are related to *Pacific Coast*

27

1   *Federation of Fisherman's Association/Institute for Fisheries*
2   *Resources v. Gutierrez*, E.D. Cal. Case No. 1:06-cv-0245 OWW GSA
3   ("*Gutierrez*"), *Natural Resources Defense Council et al. v.*
4   *Kempthorne*, E.D. Cal. Case No. 1:05-cv-1207 OWW GSA
5   ("*Kempthorne*"), *Central Delta Water Agency et al. v. United*
6   *States Fish and Wildlife Service, et al.*, Case No. 1:09-cv-1003
7   OWW GSA (E.D. Cal.), and the Consolidated and/or Coordinated
8   Delta Smelt Cases ("Delta Smelt Cases"), 1:09-cv-0407 OWW GSA,
9   1:09-cv-0422 OWW GSA, 1:09-cv-0631 OWW GSA, 1:09-cv-0892 OWW GSA,
10  1:09-cv-0480 OWW GSA.

11      2.   Specifically with respect to the Delta Smelt Cases,
12  Plaintiffs San Luis & Delta Mendota Water Authority, Westlands
13  Water District, and State Water Contractors anticipate
14  coordinating preliminary interim remedy hearings in those cases
15  with preliminary interim remedy hearings in the Salmon Cases in
16  the Fall 2009.

17

18  XVII.    THE APPROPRIATENESS OF ANY VARIANCE FROM THE USUAL
19  FILING AND SERVICE REQUIREMENTS APPLICABLE IN ACTIONS OR ANY
20  OTHER MATTERS THAT MAY FACILITATE THE JUST, SPEEDY, AND
21  INEXPENSIVE DETERMINATION OF THE ACTION.

22      1.   In accordance with this Court's Order of May 1, 2009,
23  in the Smelt Case, the Parties agree that the Administrative
24  Record will be filed in the form of searchable CD-ROMs.  However,
25  the searchable version will not be available to file on October
26  19, 2009, but will be provided to the Court and the parties as
27  soon as possible thereafter, on or before November 19, 2009.

28      2.   In the interests of efficiency and consistent with the

e-filing requirements of the Eastern District, service of process
of pleadings shall be deemed accomplished on the date of
electronic service.

XVIII.   INTERIM PROVISIONAL REMEDIES.

　　1.   The Plaintiffs in these cases give notice that they may
seek interim provisional remedies based on the conditions during
the 2009-2010 water year and other exigencies that may be
presented.

　　2.   Federal Defendants and Defendant-Intervenors note that
in the event that interim provisional remedies are sought,
changes to the present case schedule may be required.

IT IS SO ORDERED.

Dated:　　September 23, 2009　　　　　　　　/s/ Oliver W. Wanger
　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE