1

**UNITED STATES DISTRICT COURT**

2

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

3

| | |
|---|---|
| 4 | **Lead Case:** |
| 5 | **1:09-cv-00407-OWW-BAM** |
| 6 | **Member Cases:** |
| | **THE CONSOLIDATED DELTA SMELT CASES** **1:09-cv-00480-OWW-GSA** **1:09-cv-00422-OWW-GSA** |
| 7 | **1:09-cv-00631-OWW-DLB** |
| 8 | **1:09-cv-00892-OWW-DLB** |
| 9 | **Partially Consolidated With:** |
| 10 | **1:09-cv-01201-OWW-DLB** |
| 11 | **ORDER RE MOTION TO EXTEND** |
| 12 | **REMAND SCHEDULE (Doc. 1080)** |
| 13 | **Lead Case:** |
| 14 | **1:09-CV-01053 OWW BAM** |
| 15 | **Member Cases** |
| 16 | **THE CONSOLIDATED SALMONID CASES** **1:09-CV-01090 OWW DLB** **1:09-CV-01378 OWW DLB** |
| | **1:09-CV-01520 OWW SMS** |
| 17 | **1:09-CV-01580 OWW DLB** |
| 18 | **1:09-CV-01625 OWW SMS** |
| 19 | **ORDER RE MOTION TO EXTEND** |
| 20 | **REMAND SCHEDULE (Doc. 703).** |

21

**I. INTRODUCTION**

22

The final amended judgment in the *Consolidated Delta Smelt Cases* requires the U.S. Bureau

23

of Reclamation ("Reclamation") and the U.S. Fish and Wildlife Service ("FWS") to complete a revised

24

Biological Opinion ("BiOp") under the Endangered Species Act ("ESA") regarding the impact of

25

proposed operation of the Central Valley Project ("CVP") and State Water Project ("SWP") on the

26

threatened delta smelt, as well as to conduct certain related analyses under the National Environmental

27

Policy Act ("NEPA"), by December 1, 2013. 1:09-cv-00407 ("*Smelt*") Doc. 884. The final judgment in

28

**1**

the *Consolidated Salmonid Cases* requires Reclamation and the National Marine Fisheries Service ("NMFS") to complete a BiOp analyzing the impact of CVP and SWP operations on five aquatic species, including three salmonid species, and a related NEPA analyses, in accordance with a schedule that calls for issuance of a Record of Decision by Reclamation by April 29, 2016. 1:09-cv-01053 ("*Salmonid*") Doc. 655. The schedules embodied in these judgments were modeled largely after schedules suggested by Federal Defendants, over numerous objections to the length of the remand period. *Smelt* Doc. 877-1; *Salmonid* Doc. 653.

Federal Defendants from these two sets of consolidated actions, as well as Plaintiff-Intervenor in both cases, the California Department of Water Resources ("DWR"), jointly move to extend the respective remand schedules by three additional years. *Smelt* Doc. 1090; *Salmonid* Doc. 713. The Court has carefully reviewed the extensive pleadings, declarations, and attachments filed in connection with these motions, and concludes that movants have not yet met their burden under Fed. R. Civ. P. 60(b), which governs amendment of the judgments in question.

## II. <u>STANDARD OF DECISION</u>

Fed. R. Civ. P. 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Here, movants rely on Rule 60(b)(5), asserting application of the respective judgment "prospectively is no longer equitable." *Smelt* Doc. 1095 at 9-10; *Salmonid* Doc. 726 at 7. A party invoking Rule 60(b)(5) must satisfy a two-prong standard. *United States v. Asarco, Inc.*, 430 F.3d 972, 979 (9th Cir. 2005) (citing *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992)). First, "[t]he moving party must satisfy an initial burden of showing a significant change either in factual conditions or in the law warranting modification of the [judgment]." *Id*. (citing *Rufo*, 502 U.S. at 384). Next, "the proposed modification [must be] suitably tailored to resolve the problems created by the changed factual or legal conditions." *Id*. (citing *Rufo*, 502 U.S. at 391). If the movant can point to "significantly changed factual conditions, … it must additionally show that the changed conditions make compliance with the [judgment] 'more onerous,' 'unworkable,' or 'detrimental to the public interest.' " *Id*. (citing *Small v. Hunt*, 98 F.3d 789, 795 (4th Cir. 1996) and quoting *Rufo*, 502 U.S. at 384). Such changes in circumstances need not be "unforeseeable, but only unforeseen." *Rufo*, 502 U.S. at 358. For example, in *Rufo*, which concerned modification of a a consent decree, the Supreme Court warned that modification should not be permitted "where a party relies upon events that actually were anticipated at the time it entered into a decree." *Id*. In such a circumstance "modification should be granted only if the party satisfies the heavy burden of convincing the court that it agreed to the [judgment] in good faith, made a reasonable effort to comply, and should be relieved of the undertaking under Rule 60(b)." *Id*.

## III. DISCUSSION

Movants describe two "changed circumstances" to justify the requested three year extensions: (1) the development of a "collaborative science and adaptive management program"; and (2) recent changes to the Bay Delta Conservation Plan ("BDCP"). Overall, the additional three years is requested so that the moving agencies "can use their limited resources in ways that are the most effective for the short-term and long-term protection of ESA listed species." *Smelt* Doc. 1080 at 4; *Salmonid* Doc. 713

at 3-4.

A.     **Collaborative Science and Adaptive Management Program.**

Movants' primary justification for the extension appears to be the contention that the additional time will allow the agencies to engage in a "Collaborative Science and Adaptive Management Program" ("CSAMP" or "Program"). The record contains a November 29, 2012 joint proposal that explains that the Program will involve establishment of a Collaborative Adaptive Management Team ("CAMT"), which will bring together representatives from the relevant "State and Federal, public water agencies, [Non-Governmental Organizations ("NGOs")], and other [parties involved in these cases]," along with other senior scientists invited to participate by mutual consent. *Smelt* Doc. 1080-1 at 2. What exactly this group will do is only described in the most general terms. The "purpose" of the CAMT is "to provide an expanded opportunity for effective involvement of the public water agencies and the NGO community in the design, evaluation, and implementation of an active adaptive management program and operational strategies for the State and Federal water projects affecting the Bay Delta over this interim period, and thereby serve as an early start on the collaborative science processes contemplated for the BDCP." *Id*. This and other language in the Proposal seem to suggest the work of the CSAMP and CAMT will be focused on development of strategies to apply during the interim period (i.e., before the new BiOps are issued). There is some suggestion that information gleaned from the CSAMP and input collected from members of CAMT will be provided to an independent science review panel to be convened for the purpose, among other things, of evaluating additional measures or actions that may contribute to the conservation of the listed species and their habitats. *Id*. at 4-5.

At first glance, it appears that movants have simply changed their minds about how they wish to go about gathering information for use in preparing the revised BiOps. While this might be a sound policy choice that could have been considered in designing the timeline for remand, the fact is that a

**4**

timeline was set, in accordance with Federal Defendants' prior wishes, and embodied in final judgments entered by this Court. Rule 60(b) does not permit modification of a judgment based on whim. Why this constitutes a "significant change in factual conditions" is entirely unclear. Why could this collaborative process not have been incorporated or presumed in the original schedule? Is it truly a paradigm change in the way the agencies work with each other and stakeholders? If so, what has "changed"?

    What appears to lie at the heart of the desire to implement the CSAMP is movants' concern that the final BiOps will be more robust if the CSAMP is allowed to proceed, presumably so that the agencies can apply any additional scientific findings and operational/management experience gained in the next several years. *See* Declaration of Dale Hoffman-Floerke, *Smelt* Doc. 1080-2 at ¶6; Declaration of Donald Glaser, *Smelt* Doc. 1080-3 at ¶¶ 8-9; Declaration of Ren Lohoefener, *Smelt* Doc. 1080-4 at ¶ 5; Declaration of Rodney R. McInnis, *Smelt* Doc. 1080-5 ¶ 8. While, <u>in theory only</u>, this might constitute a "significantly changed factual condition" rendering compliance with the original judgment "more onerous," "unworkable," "or detrimental to the public interest," at the very least, this demands a showing that the additional information that will be gained is likely to advance the "robustness" of the BiOps so as to avoid such problems. The current record contains no such showing. The Proposal and related declarations are as vague as can be imagined about both the agencies' concerns regarding the existing scientific record[1] and how the CSAMP aims to correct those deficiencies. Nor does the record contain any information that would justify a finding that the "the proposed modification [is] suitably tailored to resolve the problems created by the changed factual or legal conditions." For example, the remand schedule for the smelt BiOp is winding down, with less

---

[1] Certain Plaintiffs joining the motions cite extensively to the prior merits rulings in these cases, *see, e.g., Smelt* Doc. 1096 at 5; *Salmonid* Doc. 725 at 5-6, which identify several areas in which the respective agencies' treatment of the scientific material in the current BiOps amounted to "arbitrary" and/or "capricious" agency action in violation of the Administrative Procedure Act. Yet, the agencies were well aware of these rulings when they proposed the deadlines that are currently in force. The rulings cannot justify modification of the judgments under Rule 60(b).

than a year left before the deadline. Movants do not assert that they will be incapable of completing the BiOp on time. Why, then, would it be "less onerous" or "more beneficial to the public interest" to interrupt this process and begin an entirely new, and, as far as the Court can tell, largely undefined, collaborative scientific adaptive management process?  Likewise, more than three years remain in the schedule for completion of the revised salmonid BiOp. Why does the agency need three additional years to incorporate the CSAMP? Previous motions to amend judgments in these consolidated cases have provided detailed scheduling information to justify such a finding. The present record is devoid of any such information.

**B.    BDCP.**

A secondary influence driving this request appears to be the desire to harmonize the analytical approaches taken in the BiOps with analyses being undertaken as part of the BDCP process. It is even more difficult to understand how this constitutes a "significantly changed factual condition." DWR is drafting BDCP for submission to FWS, NMFS, and the California Department of Fish and Game, as part of an application for incidental take permits under ESA § 10[2] and the California Natural Community Conservation Planning Act. Hoffman-Floerke Decl. at ¶2. It is undisputed that planning for the BDCP has been underway for several years and was underway when the original judgment was entered. The BDCP was considered in designing the amended judgment in the Consolidated Delta Smelt Cases and the judgment in the Consolidated Salmonid Cases. *See Smelt* Doc. 765 (Tr. Jan. 4, 2011) at 22; *Smelt* Doc. 850 at 2; *Salmonid* Doc. 637 at 2-3. DWR's declarant indicates that the BDCP underwent a design change in July 2012, including a reduction in the number of Sacramento River intakes, a reduction of total conveyance capacity, and other proposed changes to maximize energy

---

[2] Section 10 of the ESA provides an alternative means of compliance with the ESA by permitting an applicant to apply for an Incidental Take Permit ("ITP") by preparing a "habitat conservation plan" that specifies**:** (1) the likely impact to the species from the proposed takings; (2) the steps the applicant will take to minimize and mitigate such impacts and the funding available for such mitigation; (3) alternative actions considered, and the reasons for not selecting them; and (4) such other measures as the Secretary may require as necessary or appropriate for the purposes of the plan. *See* 16 U.S.C. § 1539(a)(2)(A).

efficiency and minimize environmental impacts. Hoffman-Floerke Decl. at ¶ 3. But nowhere is it explained why these design changes constitute a change in circumstance relevant to the kind of strategic planning approaches at issue here, let alone why they now (as opposed to at the time the original judgments were entered) motivate the agencies to modify the BiOp remand process to ensure consistency between the BiOps and relevant BDCP documents.

The unstated implication is that because of shifted emphasis within the BDCP program, all parties, including the moving agencies, are now taking the BDCP more seriously. Accordingly, because movants have limited resources, they now wish to modify the approach taken in the development of the BiOps to permit work on the BiOps to be useful in the BDCP process and visa-versa. Assuming, arguendo, that this constitutes a "significantly changed factual condition[]," movants have failed to show in any detail how the changed conditions make compliance with the judgment "more onerous," "unworkable," or "detrimental to the public interest," nor how the "the proposed modification [is] suitably tailored to resolve the problems created by the changed factual or legal conditions." The Court has been provided with no details about the nature of the scientific methodologies proposed under the BDCP, how the current approaches being taken in the preparation of the BiOps are incompatible with those proposed under the BDCP, how the CSAMP might be integrated with those methodologies, how the three year timeframe will be utilized to accomplish any such integration, and why an additional three years (as opposed to one or two or none) is "suitably tailored" to enhance consistency.

## IV. CONCLUSION

Although the Court acknowledges that the relevant agencies retain significant discretion to determine how to best develop the necessary evidence on remand, *see Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp.*, 423 U.S. 326, 333-34 (1976), the Court is bound by the Federal Rules of Civil Procedure and cannot cast aside settled expectations embodied in the judgments on this

record.

Rather than deny the motion outright, as the Court is inclined to do, the movants are directed to submit a supplement that provides additional detail regarding the CSAMP, including, but not limited to, those issues noted above. The Court directs all Parties to work together toward the development of a joint detailed revised CSAMP proposal. If, after review of the supplemental filings, the Court believes an extension is warranted under Rule 60(b), it will be to permit this <u>collaborative</u> process to move forward. Defendant-Intervenors' objections to the extension are noted, have not been overruled, and will not be waived by their participation in the process of developing the revised CSAMP proposal.

Any revised CSAMP proposal and supporting documents shall be filed on or before March 1, 2013.

**SO ORDERED**
**Dated: January 30, 2013**

                                          **/s/ Lawrence J. O'Neill**
                                          **United States District Judge**

**8**