UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| THE CONSOLIDATED DELTA SMELT CASES | Lead Case:<br>1:09-cv-00407-LJO-BAM<br><br>Member Cases:<br>1:09-cv-00480-LJO-GSA<br>1:09-cv-00422-LJO-GSA<br>1:09-cv-00631-LJO-DLB<br>1:09-cv-00892-LJO-DLB<br><br>Partially Consolidated With:<br>1:09-cv-01201-LJO-DLB<br><br>**ORDER RE REQUEST EXTEND REMAND SCHEDULE (Doc. 1109)** |
|---|---|
| THE CONSOLIDATED SALMONID CASES | Lead Case:<br>1:09-CV-01053 LJO BAM<br><br>Member Cases<br>1:09-CV-01090 LJO DLB<br>1:09-CV-01378 LJO DLB<br>1:09-CV-01520 LJO SMS<br>1:09-CV-01580 LJO DLB<br>1:09-CV-01625 LJO SMS<br><br>**ORDER RE MOTION TO EXTEND REMAND SCHEDULE (Doc. 745).** |

The final amended judgment in the *Consolidated Delta Smelt Cases* required the U.S. Bureau of Reclamation ("Reclamation") and the U.S. Fish and Wildlife Service ("FWS") to complete a revised Biological Opinion ("BiOp") under the Endangered Species Act ("ESA") regarding the impact of proposed operation of the Central Valley Project ("CVP") and State Water Project ("SWP") on the threatened delta smelt, as well as to conduct certain related analyses under the National Environmental Policy Act ("NEPA"), by December 1, 2013. 1:09-cv-00407 ("*Smelt*") Doc. 884. The final judgment in

the *Consolidated Salmonid Cases* required Reclamation and the National Marine Fisheries Service ("NMFS") to complete a BiOp analyzing the impact of CVP and SWP operations on five aquatic species, including three salmonid species, and a related NEPA analyses, in accordance with a schedule that calls for issuance of a Record of Decision by Reclamation by April 29, 2016. 1:09-cv-01053 ("*Salmonid*") Doc. 655.

In late December 2012, Federal Defendants from these two sets of consolidated actions, as well as Plaintiff Intervenor in both cases, the California Department of Water Resources ("DWR") (collectively, "Movants") jointly moved to extend the respective remand schedules by three additional years. *Smelt* Doc. 1090; *Salmonid* Doc. 713. In an April 9, 2013 Order, the Court found that an extension was warranted to allow staff from the relevant federal and state agencies time to participate in a Collaborative Science and Adaptive Management Process ("CSAMP"), the stated goal of which is to "develop a robust science and adaptive management program, with collaboration of the scientists and experts from the Public Water Agencies ... and the NGO community, that will inform the development and implementation of the BiOps, [the Bay Delta Conservation Program ("BDCP")], and other programs." *Smelt* Doc. 1106; *Salmonid* Doc. 739 at 5. Among other things, the Court concluded: (1) that, on balance, Movant's interest in pursuing the CSAMP process represented a solid step away from the pattern of litigation that has burdened the parties in recent years; (2) CSAMP offers a potential mechanism to advance collaboratively scientific understanding in areas that have previously been the subject of intense dispute; and (3) Movants' staff could not simultaneously pursue the CSAMP and complete the BiOps according to the original schedule. *See generally Smelt* Doc. 1106; *Salmonid* Doc. 739. However, the Court also concluded:

> Because the CSAMP process ha[d] not yet begun and its exact processes [were] to be developed in a collaborative manner, Movants [were] unable at [that] time to provide details of the CSAMP process, what it is likely to accomplish, and how those accomplishments will be brought to bear on the respective consultation processes. [] This lack of detail provide[d] the Court with little assurance that CSAMP will proceed as envisioned, let

alone that CSAMP will actually result in scientific progress, as opposed to "collaborative" gridlock.

*Id*. at 15. Therefore "rather than granting Movants a three-year blank check, during which time CSAMP could stagnate or entirely fall apart," the Court granted a staged extension, whereby the parties were required to submit a status report at the end of the first year, detailing progress that has been made with the CSAMP and providing additional information about CSAMP's future activities. *Id*. at 15-16. If the annual status reports demonstrate substantial progress, a further one year extension would be granted, while "the opposite is equally true," insofar as "further extensions will be nonexistent" in the absence of substantial progress. *Id*.

The parties timely submitted a one-year Joint Status Report ("JSR") on February 18, 2014. *Smelt* Docs. 1108-09; *Salmonid* Doc. 745. The JSR summarizes progress to date and future plans for the CSAMP and related processes. *Id*. Movants attached to the JSR a detailed "Progress Report to the Collaborative Science Policy Group" ("CSAMP Progress Report"), which provides further information and detailed schedules. Declaration of Maria Rea, Ex. 1, *Smelt* Doc. 1112-1; *Salmonid* Doc. 747-1.

The JSR also provides the positions of various Plaintiffs and Defendant Intervenors on the progress of the CSAMP process. Several Plaintiffs express concerns and request that no more than a six month extension be granted and/or that additional conditions should be imposed upon the remand. The Court permitted Movants an opportunity to respond to Plaintiffs' contentions. *See Smelt* Doc. 1115; *Salmonid* Doc. 752 ("Response").

Having reviewed the JSR, its attachments, and Movants' response, the Court is generally satisfied that progress is being made in the CSAMP process. Approximately ten months ago CSAMP did not exist. Today, it is an organized body that has identified priority topics, namely: (1) fall outflow management for delta smelt; (2) Old and Middle River ("OMR") management and entrainment of delta smelt; and (3) South Delta salmonid survival. CSAMP Progress Report at 1-4. CSAMP has also articulated at least some specific scientific questions for further inquiry. *See id.* at 13-30. In the next

phase of work, specific experiments will be designed to address key questions and hypotheses already identified. *Id*. at 12. Critically, acknowledging the obvious time pressure that exists even if a full three year extension is granted, initial efforts will "focus on the analysis of existing data sets," so will "not involve experimental designs in the traditional sense of lab or field data collection, but will include clearly defined methods and accepted analytical techniques, and will include review and examination of the existing data sets and how those data were obtained." *Id*. at 31.

Several Plaintiffs express concerns about the progress thus far, as well as about the future direction of CSAMP.[1] Because one of the central purposes of this process was to move away from constant litigation over scientific issues toward collaborative scientific inquiry, several of these concerns merit further discussion.

State Contractor Plaintiffs express concerns that CSAMP is running behind schedule in its work on four key issues: (1) development of life-cycle models for delta smelt and salmonids; (2) development of turbidity models; (3) investigation into the effects of fall outflow on delta smelt; and (3) inquiry into salmonid survival in the South Delta. JSR at 14-15. In general, State Contractor Plaintiffs are concerned that CSAMP has not moved beyond the planning stage on any of these issues. *Id*. More specifically, State Contractor Plaintiffs are concerned that the work of the South Delta Salmonid Research Collaborative ("SDSRC"), on which CSAMP planned to rely, may be as much as a year behind schedule. JSR at 15. Movants do not directly deny this latter assertion, and instead explain: (1) that SDSRC and CSAMP are separate processes; (2) CSAMP's workplan still proposes implementation of several study plans that build on the efforts of SDSRC; and (3) that the uncertainty associated with the year-by-year extension (as opposed to the originally-requested three-year extension) has resulted in the need to allocate resources in a way that has slowed down progress on CSAMP.

---

[1] All parties agree that some form of further extension is warranted. *See JSR*. Plaintiffs San Luis & Delta-Mendota Water Authority, Westlands Water District, Family Farm Alliance, Stewart & Jasper Orchards, Arroyo Farms LLC, King Pistachio Orchard, Oakdale Irrigation District, South San Joaquin Irrigation District, and Stockton East Water District raise no specific objections to Movant's request for an additional year-long extension. JSR at 12.

Response at 5. In addition, State Contractors Complain that Movants did not adopt an Annual Operating Plan ("AOP") for the CVP and SWP by December 15, as was promised in the original moving papers.

State Contractor Plaintiffs propose imposing several new requirements on the remand process to address these concerns. First, they request that the parties be required to submit a joint status report at six month intervals. In addition, State Contractors Plaintiffs request that the following specific benchmarks be imposed:

1. The Collaborative Adaptive Management Team ("CAMT") formed under CSAMP and made up of managers and senior scientists, should be required to convene a life cycle model working group by August 1, 2014.

2. CAMT should be required to finalize a study plan for new turbidity research by August 1, 2014.

3. Any new joint status report should address how the research, modeling, and other work completed at that point will be incorporated into the reconsultation process, along with a schedule of action items and proposed milestone dates for the structured development of the new BiOps.

4. By August 1, the U.S. Fish and Wildlife Service and National Marine Fisheries Service should be required to collaborate with the other parties to devise a structured approach for development of new BiOps.

5. By August 1, CAMT should convene a working group to begin work on the Annual Operating Plan for each year.

*Id.* at 15-16.[2]

---

[2] Kern County Water Agency and the Coalition for a Sustainable Delta ("Kern/Coalition Plaintiffs") share the State Contractors Plaintiffs' concerns and specifically state that they do not oppose an additional one year extension to the remand subject to the conditions outlined by the State Contractor Plaintiffs. JSR at 19-20. Kern/Coalition Plaintiffs raise

While the Court shares State Contractor Plaintiffs' concern that in the near future CSAMP must produce results that go beyond forming groups and asking questions, the Court does not believe these proposed conditions are appropriate. Movants have explained in detail how CSAMP plans to proceed in a manner that is consistent with the first two proposed conditions, imposing identical deadlines on the CSAMP process. Response at 4-5. If CSAMP fails to meet these self-imposed deadlines without substantial justification, such failures will be considered when the Court next reviews the progress of the remand.

The proposed conditions regarding the imposition of a process for the "structured development" of the new BiOps are entirely without foundation in the law. Nothing in the ESA requires the agencies to structure the development of BiOps in any particular manner, nor does the ESA require the agencies to collaborate with interested third parties in the development of the BiOps. The Court has always understood the CSAMP process to be a parallel one, whereby the parties would attempt to collaborate to develop new scientific understandings that <u>may or may not</u> result in additions or clarifications to the "best available science." It is the "best scientific and commercial data available," not "the results of the CSAMP," which must be utilized in any BiOp. *See* 16 U.S.C. § 1536. How the wildlife agencies intend to draw upon the results of CSAMP in the BiOps is, at least in the first instance, the business of those expert agencies.[3]

---

several additional arguments. First, Kern/Coalition Plaintiffs complain, without any supporting detail, that NMFS has failed to dedicate sufficient resources to the CSAMP process, yet Kern/Coalition Plaintiffs do not ask the Court to intervene in any way to address this asserted failure. *Id*. at 18. Second, Kern/Coalition Plaintiffs express concern about the role interested parties will play in conducting planned scientific investigations and seeking independent review of scientific products that result from those investigations. Kern/Coalition Plaintiffs concede that the CSAMP Progress Report addresses some of these participation issues, but stress that it is imperative that the process move forward rapidly in order to ensure that high priority tasks are completed in 2014. *Id*. at 19. As discussed elsewhere herein, if CSAMP fails to meet these self-imposed deadlines without substantial justification, such failures will be considered when the Court next reviews the progress of the remand.

[3] The Court's April 9, 2013 Order did direct the parties to include in the JSR information about how results from CSAMP would be incorporated into the consultation process. JSR at 15. However, this was not intended to require those results to be incorporated in any particular manner. Rather, the Court intended to request information about how the agencies anticipated the <u>timing</u> of CSAMP's work would coincide with the preparation of the BiOps. For example, should the CSAMP's schedule demonstrate that CSAMP will be unable to produce any measurable results in time for those results to be considered for incorporation into the BiOps, the entire premise underlying the extension of the remand period would be

As to the development of the AOP by December 15 of each year, Movants explain that a 2014 AOP was completed in January after a review by CAMP members. Response at 8. State Contractor and Kern/Coalition Plaintiffs fail to explain how this slight delay prejudiced them in any way. The Court will assume Movants will proceed with development of a 2015 AOP on a timeline that likewise avoids prejudice to any Plaintiff.

Finally, the Court has given serious consideration to State Contractor Plaintiffs' proposal to require the filing of a joint status report every six months, as opposed to at the end of each year. This request is joined the Kern/Coalition Plaintiffs and Defendant Intervenors. While such a requirement would better permit the Court to monitor whether Movants have met the various self-imposed deadlines and commitments made in the CSAMP Progress Report, there is another side to the coin. Movants contend that adding another litigation deadline along with the added uncertainty associated with only extending the remand schedule by six months instead of one year will further disrupt CSAMP's progress. There can be no dispute that producing a robust progress report on a process as complex as CSAMP is an onerous process. Movants filings in connection with this JSR are detailed and lengthy and undoubtedly required substantial staff time to prepare. Moreover, Movants have explained that the uncertainty associated with approving extensions one year at a time has caused disruptions in their workflow. Further shortening the extension periods would exacerbate this problem. The Court does not believe requiring such progress reports every six months is in the public interest.

Because the Court believes substantial progress has been made thus far, a further one year extension will be granted. However, to ensure that Movants are moving forward according to their own proposed schedule(s), the parties will be required to submit very brief interim joint status report every four months. These interim joint status reports shall not exceed four pages in length (inclusive of attachments and/or supporting documents) and should summarize the progress of the CSAMP process

---

called into question. The Court would like to see more information along these lines in future status reports.

and how the timing of CSAMP will interact with the timing of the issuance of the BiOps, assuming the full three year extension will eventually be approved. These interim joint status reports should incorporate the positions of all parties.

The Court is aware that on January 27, 2013, the Ninth Circuit continued oral arguments in the *Consolidated Salmonid Cases* appeal to September 2014, in light of its "anticipated opinion" in the *Consolidated Delta Smelt* appeal, which was argued in September 2012. Obviously, any such opinion may impact the remand in myriad ways. Because the Court cannot anticipate that impact until it occurs, the remand schedule will be set based upon current circumstances and will be adjusted accordingly should circumstances be altered by any appellate decision.

## CONCLUSION AND ORDER

For the reasons set forth above, all deadlines in both the *Consolidated Smelt* and *Consolidated Salmonid* cases are again extended by one year. On or before February 14, 2015, the parties shall submit a joint status report to the Court detailing the further progress that has been made in connection with the CSAMP. A final, additional one year extension will be considered at that time.

In the interim, the parties shall submit brief, interim joint status reports every four months, with the first due on June 14, 2014 and the second on October 14, 2014, in accordance with the instructions set forth above.

In addition, within seven days of any ruling by the Ninth Circuit in the *Delta Smelt Consolidated Cases*, the parties are directed to file a joint status report outlining their respective positions on the impact of any such ruling on these consolidated cases.

**SO ORDERED**
**Dated: March 4, 2014**

               **/s/ Lawrence J. O'Neill**
               **United States District Judge**